Filed 1/23/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JIMMY MOORE,<br><br>    Defendant and Appellant. | D071803<br><br><br><br>(Super. Ct. No. SCD267767) |

APPEAL from a judgment of the Superior Court of San Diego County, David M. Rubin, Judge.  Affirmed.

Cathryn Lintvedt Rosciam, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Tami Falkenstein Hennick and Steven Taylor Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

_____

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.

A jury found Jimmy Moore guilty of one count of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a) and two counts of vandalism in violation of Penal Code[1] section 594, subdivision (a), and found true an allegation that he caused damage of more than $400, pursuant to section 594, subdivision (b)(1). The superior court sentenced him to three years of formal probation. Among other conditions of Moore's probation, the court required him to submit to warrantless searches of his person, vehicle, residence, property, personal effects, computers and recordable media, and to obtain his probation officer's approval as to his residence and employment.

On appeal, Moore asserts the trial court erred by refusing to instruct the jury regarding voluntary intoxication as a defense to the vandalism charges, and that the electronic search and residence and employment approval conditions are unconstitutionally overbroad. We conclude the trial court correctly determined voluntary intoxication is not a defense to vandalism. Further, we determine Moore has forfeited his arguments regarding the conditions of his probation. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Moore began using PCP when he was 16 and amassed a fairly extensive criminal history over the following 20 years, including a number of convictions for drug-related offenses. Around 2011, he obtained a job that required regular drug testing and was sober for a number of years, until he was laid off in June 2016. On the evening of July 2,

---

1       All further statutory references are to the Penal Code.

2016, Moore smoked a PCP laden marijuana cigarette. He began acting erratically in a fast food restaurant and the police were alerted; he told them he had used PCP, and paramedics took him to the hospital for treatment.

The hospital released Moore later that evening, and he walked to a convenience store nearby. Upon entering the store, he walked to the back and began pounding on an emergency exit door. The clerk, concerned about Moore's demeanor, called the police.

Moore opened the emergency exit door and entered a storage area between the store and a parking garage. The door closed behind him; it did not open from inside so his only available exit was through the parking garage. Distraught, Moore punched holes in the walls of the storeroom and threw things around and out of the room before leaving through the door to the parking garage. He then caused extensive damage to the parking garage before the police arrived and were able to subdue and arrest him. After the arrest, the police searched his backpack and found crystal methamphetamine.

*Trial*

The People charged Moore with two counts of vandalism resulting in property damage in excess of $400, possession of a controlled substance, and resisting an officer, and further alleged that he had a number of probation denial priors and two prior strikes. At trial, the prosecution played video footage of Moore causing damage to the store room and parking garage. Moore did not deny that it was him on the video or that he had caused the damage, but testified that he was under the influence of PCP and could not remember much of what happened after he entered the storage room.

Dr. Kelin, a psychologist familiar with the effects of PCP, testified that PCP causes hallucinations and often puts users in a violent, dissociative state, and opined that Moore was in such a dissociative state on the night of the incident. He evaluated Moore after the incident and determined Moore's many years of drug use had caused neurological impairments and possible psychopathology, but also found during a follow up exam that Moore had made significant cognitive improvements while in treatment following his most recent arrest. During Dr. Kelin's testimony, the court gave the jury a limiting instruction, explaining that any testimony regarding Moore's mental state was relevant only to the charge of resisting an officer.

At the conclusion of the trial, Moore asked the court to instruct the jury on voluntary intoxication as a defense to the charges of resisting an officer and vandalism. The prosecutor did not oppose the instruction as applied to the charge of resisting an officer, but asserted the defense was not applicable to vandalism because vandalism is not a specific intent crime. After extensive argument, the trial court ultimately agreed with the prosecutor that the voluntary intoxication evidence was not applicable to the vandalism charge. Thus, the court instructed the jury on voluntary intoxication only as a potential defense to the charge of resisting an officer, and further clarified that the jury could not consider evidence of voluntary intoxication as a defense to vandalism. The court did, however, permit Moore's counsel to argue during closing that Moore was not guilty of vandalism because he was so high on PCP that he had no idea what was going on and, thus, did not act maliciously.

4

The jury found Moore guilty on the charges of vandalism and possession of a controlled substance, but was unable to reach a verdict on the charge of resisting an officer.

*Sentencing*

After the verdict, Moore admitted his priors but asked the trial court to exercise its discretion to dismiss his previous strikes pursuant to section 1385, and to grant him probation. The probation department recommended that the court grant formal probation, but also recommended a custodial term of 240 days to be served in a residential drug treatment program, as well as a number of other probation conditions.

At the sentencing hearing, the court granted Moore's request to dismiss the prior strikes. Moore's counsel then focused on the custodial portion of the sentencing recommendation. She asserted that Moore had been doing well in an outpatient program and was helping to support a young child, and thus asked the court to allow Moore to continue with an outpatient, as opposed to residential, program. The court ultimately granted the request and replaced the term of custody in a residential treatment program with a condition requiring Moore to attend an approved outpatient program. Moore did not object to any of the remaining proposed conditions of probation and the court imposed them largely as proposed by the probation department.

Moore appeals.

DISCUSSION

I. *Voluntary Intoxication as a Defense to Vandalism*

Moore asserts the trial court erred by refusing to instruct the jury on voluntary intoxication as a defense to the vandalism charges. We review assertions the trial court should have given a particular jury instruction de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Section 29.4 governs the admissibility of evidence of voluntary intoxication and states, in part, "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." (§ 29.4, subd. (b).) Evidence of voluntary intoxication is thus inadmissible to negate general criminal intent, and whether such evidence is admissible typically depends on whether the crime at issue is one of general or specific intent. (*People v. Atkins* (2001) 25 Cal.4th 76, 81-82 (*Atkins*).) General intent crimes require only a general criminal intent to commit the proscribed act, while specific intent crimes require an additional intent to do some further act or achieve some further consequence, typically denoted by language such as "with the intent to" or "for the purpose of". (*Atkins*, at pp. 82, 86; see *People v. Hood* (1969) 1 Cal.3d 444, 456-457.)

In addition, evidence of voluntary intoxication may be admissible to negate the specific knowledge or mental state requirement included in a narrow set of crimes nevertheless classified as general intent crimes. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 983-984; *People v. Lopez* (1986) 188 Cal.App.3d 592, 598-599.) For example, the

6

crime of resisting arrest requires the perpetrator to know the person they are resisting is an officer, and thus evidence of voluntary intoxication is admissible to show the defendant did not know. (*Reyes*, at pp. 985-986.) Similarly, the crime of possession of stolen goods requires the perpetrator to know that the goods at issue were stolen, and evidence of voluntary intoxication is admissible to show the defendant did not. (*Lopez*, at pp. 599-600.)

Moore argues evidence of voluntary intoxication was admissible as a defense to the vandalism charge because the inclusion of the word "maliciously" in the statute makes vandalism a specific intent crime or, in the alternative, requires a specific mental state. We analyze both assertions together, and begin with the statute itself.

Section 594, subdivision (a) defines the crime of vandalism as follows:

"(a) Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism:

(1) Defaces with graffiti or other inscribed material.

(2) Damages.

(3) Destroys."

The statute is part of a set of statutes dealing with malicious injury to property, and follows the language of the original malicious mischief statutes. (*People v. Campbell* (1994) 23 Cal.App.4th 1488, 1493 (*Campbell*).) The malice requirement of such statutes was generally understood to require " 'more than mere intentional harm without justification or excuse; there must be a wanton and willful (or 'reckless') disregard of the plain dangers of harm, without justification, excuse or mitigation.' " (*Ibid*., quoting

7

2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against Property, § 678, pp. 761-762.)

Section 7, subdivision 4, however, explains that the use of the words "malice" or "maliciously" in the modern criminal statutes, including section 594, "import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law," unless another meaning is apparent from the context of the statute. (§ 7, subd. 4; see *People v. Watie* (2002) 100 Cal.App.4th 866, 879 [distinguishing malice and maliciously as defined by § 7, subd. 4 from other definitions].) Although no published case has specifically addressed whether vandalism is a general or specific intent crime, a number of cases have concluded that other crimes requiring malice or maliciousness as defined by section 7, subdivision 4 require only general criminal intent. (See, e.g., *Atkins, supra*, 25 Cal.4th at p. 81 [arson pursuant to § 451]; *Watie*, at p. 879 [discharging a firearm into an inhabited building as defined by § 246]; *People v. Sekona* (1994) 27 Cal.App.4th 443, 449-450 [mayhem as defined by § 203].)

In *Atkins*, the California Supreme Court directly addressed whether evidence of voluntary intoxication is admissible to negate the required mental state for arson, which requires "willfully and maliciously" setting fire to or burning a structure, forest land, or property. (*Atkins, supra*, 25 Cal.4th at p. 83; § 451, subd. (a).) The Court started by noting the statutory definition of "maliciously" as applied to arson is nearly identical to the general definition set forth in section 7, and concluded that neither the term "maliciously" or any other words in the statute required any specific intent or mental state. (*Atkins*, at pp. 85-86, 92-93.) The Court went on to distinguish arson from the

8

offense of unlawfully setting a fire, explaining the malice element of arson requires "a deliberate and intentional act" of setting a fire or causing something to burn, while the latter offense requires only an "accidental or unintentional" act. (*Id.* at p. 88.) Finally, the Court considered the policy considerations surrounding voluntary intoxication as a defense to arson, and concluded it should not be a defense from a policy standpoint, because arson is often committed impulsively and intoxication is often a precursor as it inhibits more sound judgment. (*Id.* at pp. 91-92, 95-96 (J. Mosk, concurring and further expounding on the policy implications).) Thus, the Court concluded voluntary intoxication is not a defense to the crime of arson. (*Id.* at pp. 85-86, 92-93.)

As with the arson statute, the vandalism statute itself does not require any intent besides the intent to do the proscribed acts of defacing, damaging, or destroying property, and the term "maliciously" does not import any further specific intent or mental state. (§ 594; *Atkins, supra*, 25 Cal.4th at pp. 85-86, 92-93.) Similarly, from a policy standpoint, vandalism is an aggressive act often committed impulsively, and more likely to be committed while intoxicated due to lowered inhibitions. (See, e.g., Carpenter, *Heavy Alcohol Use and Crime: Evidence from Underage Drunk-Driving Laws* (2007) 50 J.L. & Econ. 539, 548 [demonstrating a causal relationship between intoxication and vandalism].) Thus, the vandalism statute defines a general intent crime with no specific knowledge or mental state requirement, and the trial court correctly concluded evidence of voluntary intoxication is inadmissible as a defense. (See *Atkins*, at p. 82; *Campbell, supra*, 23 Cal.App.4th at p. 1493.)

9

Moore asserts the historical definition of malice as used in the statute, requiring a "wanton and willful ('or reckless') disregard for the plain danger of harm, without justification, excuse or mitigation", indicates that malice requires an additional element of wrongfulness. However, the Penal Code defines "maliciously" differently in section 7 and, in any event, as the California Supreme Court determined in *Atkins*, even willfulness does not make the crime one of specific intent, as it requires nothing more than a general intent to willfully—as opposed to accidentally—commit the proscribed, and statutorily wrongful, act. (*Atkins, supra*, 25 Cal.4th at pp. 87-89.) Thus, it does not require a specific intent or mental state of the type that evidence of voluntary intoxication can negate.

Moore also asserts *Atkins* is distinguishable because arson and the other crimes discussed therein are all inherently dangerous, such that the defendant can be presumed to be aware of the wrongfulness of his or her conduct. However, he does not provide any authority for the proposition that only inherently dangerous acts carry a presumption of wrongfulness. To the contrary, the fact that section 594 has its basis in a century-old statute dealing with malicious injury to another's property suggests that such destruction of another's property is fundamentally and presumptively wrong. (*Campbell, supra*, 23 Cal.App.4th at p. 1493.) Moreover, vandalism is potentially dangerous as well. While it may be *possible* to commit vandalism in a manner that does not include the possibility of injury or death—as Moore asserts—the same is true of arson, and many instances of vandalism, such as the one at issue here, are carried out in a potentially dangerous manner.

## II. *Probation Conditions*

Probation is not a right, but an act of leniency that allows a defendant to avoid imprisonment. (*People v. Moran* (2016) 1 Cal.5th 398, 402.) As such, the trial court has broad discretion in determining the conditions of probation necessary to serve the primary goals of probation: promoting rehabilitation and protecting the safety of the public. (*Id*. at pp. 402-403; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.) The court's discretion is not without limits, though, and any conditions regulating otherwise legal conduct must be "reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486.) In addition, conditions that restrict the exercise of constitutional rights are invalid unless narrowly tailored to the purpose of the condition. (*People v. Olguin* (2008) 45 Cal.4th 375, 384.)

A defendant who believes a proposed probation condition is unreasonable or overbroad must timely object to the condition in the trial court, thereby giving the parties an opportunity to provide argument or evidence concerning the need for the condition and the court an opportunity to modify the condition if necessary in light of such argument and evidence. (*People v. Welch* (1993) 5 Cal.4th 228, 234-235 (*Welch*).) A defendant that fails to do so typically forfeits any such argument on appeal. (*Ibid*.) Despite this general rule, a defendant may raise a facial constitutional challenge to a probation condition for the first time on appeal if the challenge involves a pure question of law that can be resolved without any reference to the trial court record. (*Id*. at p. 235; *In re Sheena K.* (2007) 40 Cal.4th 875, 887-889 (*Sheena K.*).)

11

Here, Moore argues the electronic search and residence and employment approval conditions of his probation are constitutionally overbroad, but he forfeited these contentions by failing to object at the sentencing hearing. (See *Welch, supra*, 5 Cal.4th at pp. 234-235.) Although he concedes that he did not object, he asserts his constitutional challenges fall under the exception set forth in *Sheena K., supra*, 40 Cal.4th at pages 887-889. We disagree.

The exception articulated in *Sheena K.* applies only when the court can address the contention without any reference to the record and does not apply where, as here, the appellate court must look to the record to determine whether the trial court appropriately tailored the provisions to the articulated governmental interest. (See *Sheena K., supra*, 40 Cal.4th at pp. 887-889.) In particular, a constitutional analysis in the present case would require a determination as to whether, among other things, Moore used an electronic device in the commission of his crimes, the crimes are of a nature that he may use an electronic device to commit similar crimes in the future, his place of employment or residence in some way influenced his criminal behavior or, as Moore himself asserts, the prosecutor failed to articulate a need for broad restrictions on Moore's residence or employment. Because a review of the record is necessary to address these questions, neither challenge is a purely facial challenge and the exception does not apply. (See *Welch, supra*, 5 Cal.4th at p. 235; *Sheena K.*, at pp. 887-889.)

Insofar as Moore is asserting either condition is overbroad based solely on the crimes the jury convicted him of, without reference to any facts in the record, we reject that position as well. There are ample cases, particularly in the context of drug offenses,

in which courts have found similar electronic search conditions narrowly tailored to the

governmental interests of adequately supervising the defendant while on probation and

preventing further criminal activity.[2]  (See, e.g., *People v. Nachbar* (2016)

3 Cal.App.5th 1122, 1130, review granted Dec. 14, 2016, S238210 [upholding

electronics search condition where circumstances indicated need for intense

monitoring of probationer].)  Similarly, courts have found employment and residence

approval conditions adequately tailored to the same interests where, regardless of the

crime, the individual's employment or residence was relevant to his or her rehabilitation.

(See *People v. Stapleton* (2017) 9 Cal.App.5th 989 [residential]; *People v. Burden* (1988)

205 Cal.App.3d 1277, 1280-1281 [employment]; *People v. Lopez* (1998) 66 Cal.App.4th

615, 626 [state has legitimate interest in limiting interaction with individuals that might

hamper rehabilitation].)  Absent a complete record, we decline to decide the forfeited

issues on a constitutional basis.  (See *People v. Appleton* (2016) 245 Cal.App.4th 717,

727; *California Teachers Assn. v. Board of Trustees* (1977) 70 Cal.App.3d 431, 442

[encouraging judicial self-restraint in such circumstances].)

---

[2]     Several cases addressing the constitutionality of electronic search probation
conditions are currently pending review in the Supreme Court.  (See, e.g., *In re Ricardo
P.* (2015) 241 Cal.App.4th 676, review granted Feb. 17, 2016, S230923; *In re Patrick F.*
(2015) 242 Cal.App.4th 104, review granted Feb. 17, 2016, S231428; *In re Alejandro R.*
(2015) 243 Cal.App.4th 556, review granted March 9, 2016, S232240; *In re Mark C.*
(2016) 244 Cal.App.4th 520, review granted April 13, 2016, S232849; *In re A.S.* (2016)
245 Cal.App.4th 758, review granted May 25, 2016, S233932; *In re J.E.* (2016)
1 Cal.App.5th 795, review granted Oct. 12, 2016, S236628.)

DISPOSITION

The judgment is affirmed.


                                                    BENKE, Acting P. J.

WE CONCUR:



HALLER, J.



AARON, J.

14