Filed 7/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY LYNN QUARLES,<br><br>    Defendant and Appellant. | A152282<br><br>(Sonoma County<br>Super. Ct. No. SCR698799) |

### INTRODUCTION

Defendant Jeffrey Lynn Quarles appeals from a judgment of damaging a telephone line or mechanical equipment connected to the line (Pen. Code, § 591),[1] misdemeanor battery on an elder (§ 243.25), and the lesser included offense of misdemeanor elder abuse (§ 368, subd. (c)). The convictions arise out of an altercation with his elderly parents. On appeal, defendant challenges only his section 591 conviction. Specifically, he maintains section 591 is a specific intent crime and, thus, the trial court erred in refusing to give a voluntary intoxication instruction. We affirm.

### BACKGROUND

At the time of the incident in question, defendant's parents were entertaining a guest for dinner. While defendant and his father were in the kitchen, his father observed him "acting differently." Confronting defendant about his behavior, his father accused him of drinking.

---

[1] All further statutory references are to the Penal Code.

Defendant became "belligerent and aggressive" and approached his father, coming within six inches of his father's face with his fists clenched. As his father pushed defendant's hands away, defendant responded with a swing. His father attempted to restrain defendant, and their quarrel turned into a "wrestling match." Defendant punched, kicked, and threw his father into a glass door.

On hearing the commotion, defendant's mother came into the kitchen. Seeing her husband "struggling," she picked up the telephone and called 911. Defendant pushed his mother into a table, yanked the phone from her hand, and threw it down the hallway, ejecting the batteries and disconnecting the call.

Defendant was arrested and charged with elder abuse (§ 368, subd. (b)(1)–count 1), damaging a telephone line or mechanical equipment connected to the line (§ 591– count 2), misdemeanor elder abuse (§ 368, subd. (c)–count 3), and misdemeanor battery on an elder (§ 243.25–count 4).

At the outset of trial, defendant's counsel stated she anticipated asking for a voluntary intoxication instruction as to count 2. The prosecution maintained damaging a telephone line or the connected phone is a general intent crime and therefore a voluntary intoxication instruction is unnecessary and inappropriate. Defendant's counsel asked a second time for a voluntary intoxication instruction just prior to the court instructing the jury. Citing *People v. Atkins* (2001) 25 Cal.4th 76, 82–83, 84 (*Atkins*), the court refused to give the instruction.

The jury convicted defendant of damaging a telephone line, misdemeanor battery on an elder and the lesser included offense of misdemeanor elder abuse. The trial court sentenced him to one year in jail, with release pending space available in a treatment program, plus three years' formal probation.

## DISCUSSION

We review a trial court's refusal to give a requested instruction de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; see *People v. Moore* (2018) 19 Cal.App.5th 889, 893 (*Moore*).)

2

"Section 29.4 governs the admissibility of evidence of voluntary intoxication and states, in part, '[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.' (§ 29.4, subd. (b).) Evidence of voluntary intoxication is thus inadmissible to negate general criminal intent, and whether such evidence is admissible typically depends on whether the crime at issue is one of general or specific intent. ([*Atkins, supra,*] 25 Cal.4th [at pp.] 81–82. . . .) General intent crimes require only a general criminal intent to commit the proscribed act, while specific intent crimes require an additional intent to do some further act or achieve some future consequence, typically denoted by language such as ' "with the intent to" ' or ' "for the purpose of." ' (*Atkins*, at pp. 82, 86; see *People v. Hood* (1969) 1 Cal.3d 444, 456–457 [superseded by amendments to former Pen. Code, § 22, on different grounds]. . . .)" (*Moore*, *supra*, 19 Cal.App.5th at p. 893.)

"In addition, evidence of voluntary intoxication may be admissible to negate the specific knowledge or mental state requirement included in a narrow set of crimes nevertheless classified as general intent crimes. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 983–984 . . .; *People v. Lopez* (1986) 188 Cal.App.3d 592, 598–599. . . .) For example, the crime of resisting arrest requires the perpetrator to know the person they are resisting is an officer, and thus evidence of voluntary intoxication is admissible to show the defendant did not know. (*Reyes*, at pp. 985–986.) Similarly, the crime of possession of stolen goods requires the perpetrator to know that the goods at issue were stolen, and evidence of voluntary intoxication is admissible to show the defendant did not. (*Lopez*, at pp. 599–600.)" (*Moore*, *supra*, 19 Cal.App.5th at p. 894.)

Defendant contends damaging a telephone line or the attached phone is a specific intent crime because section 591 speaks in terms of "unlawfully and maliciously" taking down, removing, injuring, disconnecting, cutting, or obstructing a telephone line. (§ 591). In support of this assertion, defendant points to section 7, subdivision 4 which

3

defines "malice" as a "wish to vex, annoy, or injure another person, *or* an intent to do a wrongful act." (§ 7, subd. (4), italics added.)

In *Moore*, the Court of Appeal rejected essentially the same argument in connection with the crime of vandalism (§ 594, subd. (a)) and held the trial court did not err in refusing to instruct on voluntary intoxication. (*Moore, supra*, 19 Cal.App.5th at p. 891.) As the court explained, section 594 "is part of a set of statutes dealing with malicious injury to property, and follows the language of the original malicious mischief statutes." (*Moore*, at p. 894.) Section 591, at issue here, is also one of these statutes.[2]

"Section 7, subdivision (4)," said *Moore*, "explains that the use of the words 'malice' or 'maliciously' in the modern criminal statutes, including section 594, 'import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established by either proof or presumption of law,' unless another meaning is apparent from the context of the statute." (*Moore, supra*, 19 Cal.App.5th at pp. 894–895.) And while no published case had specifically addressed whether vandalism was a general or specific intent crime, the court observed that a "number of cases have concluded that other crimes requiring malice or maliciousness as defined by section 7, subdivision 4 require only general criminal intent." (*Id.* at p. 895.)

The appellate court then discussed our Supreme Court's decision *Atkins*, in which the high court "addressed whether evidence of voluntary intoxication is admissible to negate the required mental state for arson, which requires 'willfully and maliciously' setting fire to or burning a structure, forest land, or property." (*Moore, supra*, 19 Cal.App.5th at p. 895.) The Supreme Court concluded that despite this language, arson is not a specific intent crime. (*Ibid.*) Neither the term "maliciously" nor any other word in the statute "required any specific intent or mental state." (*Ibid.*) Further, public

---

[2] We note that the CALCRIM jury instruction for section 591 is one of the instructions under the heading "Vandalism, Loitering, Trespass and Other Miscellaneous Offenses," one of the three instructions specifically for "Vandalism," and follows immediately after the two instructions for section 594. (CALCRIM Nos. 2900, 2901, 2902.)

4

policy did not weigh in favor of a voluntary intoxication defense because "arson is often committed impulsively and intoxication is often a precursor as it inhibits more sound judgment." (*Ibid.*)

"As with the arson statute, the vandalism statute itself does not require any intent besides the intent to do the proscribed acts of defacing, damaging, or destroying property, and the term 'maliciously' does not import any further specific intent or mental state." (*Moore, supra*, 19 Cal.App.5th at p. 895.) "Similarly, from a policy standpoint, vandalism is an aggressive act often committed impulsively, and more likely to be committed while intoxicated due to lowered inhibitions." (*Id.* at pp. 895–896.)

The same is true of section 591, which makes it a crime to "unlawfully and maliciously" take down, remove, injure, disconnect, cut, or obstruct a telephone line. (§ 591.) This language does not import any further specific intent or mental state, and the crime involves an aggressive act that may well be impulsive and triggered by voluntary intoxication.

As did the defendant in *Moore*, defendant attempts to distinguish arson and other general intent offenses—such as mayhem, willfully and maliciously discharging a firearm at a residence or out of a vehicle, and maliciously placing an obstruction on a railroad track—as "inherently dangerous" and "carry[ing] the possibility of injury or death." This inherent danger, defendant maintains, means someone committing one of these offenses "can be presumed to be aware of the wrongfulness of his conduct, and can be deemed to satisfy the malice requirement by intentionally committing the act." He contends that merely damaging a telephone line carries no such presumption.

Like the defendant in *Moore*, defendant "does not provide any authority for the proposition that only inherently dangerous acts carry a presumption of wrongfulness." (*Moore, supra*, 19 Cal.App.5th at p. 896.) Moreover, the fact that section 591, like the crime of vandalism, has its roots in "a century-old statute dealing with malicious injury to another's property suggests that such destruction of another's property is fundamentally and presumptively wrong." (*Moore*, at p. 896.)

5

In sum, there is no merit to defendant's assertion that he was entitled to an instruction on voluntary intoxication in connection with the charge of damaging a telephone line or mechanical equipment connected to the line.

## DISPOSITION

The judgment is affirmed.

_____

Banke, J.

We concur:


_____

Humes, P.J.


_____

Dondero, J.

A152282, *People v. Quarles*

Trial Court:   Sonoma County Superior Court

Trial Judge:   Hon. Elliot Lee Daum

Counsel:

Janice Wellborn, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Rene A. Chacon and Bruce Ortega, Deputy Attorneys General for Plaintiff and Respondent.