Filed 8/17/20  P. v. Molina CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TONY MOLINA, JR.,<br><br>        Defendant and Appellant. | A157412<br><br>(Contra Costa County<br>Super. Ct. No. 5-171052-4) |

Tony Molina, Jr., appeals his conviction of felony vandalism. (Pen. Code § 594, subd. (a).)[1] He contends that the evidence is insufficient to prove that the amount of damage exceeded $400, as required to make the offense a felony; that the trial court committed evidentiary and instructional errors bearing on the "amount of damage" issue; and that the court erred in failing to instruct sua sponte on vehicle tampering (Veh. Code, § 10852) as a lesser included offense of vandalism. We conclude that the evidence was sufficient to support the conviction, and that the court was not required, sua sponte, to instruct the jury on the meaning of the statutory phrase "amount of damage" or on vehicle tampering as a lesser included offense. We shall therefore affirm the conviction.

**Factual and Procedural History**

An initial complaint alleged that in June 2016, Molina violated protective and stay-away orders regarding his then-girlfriend Veronica Barrera Hurtado-Fuentes (Hurtado), assaulted her, and vandalized her car, causing less than $400 in damages.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

1

In September 2016, according to Hurtado's testimony, she and Molina were back together, and they argued at their apartment. When Molina took a shower, Hurtado left. She drove in her car to a friend's house. Molina followed in his car and, when Hurtado reached her friend's house, he pulled up next to her before she left her car. Molina tried unsuccessfully to pull open her locked car door. He then ripped off one of her car's windshield wipers, used it to try to break her window, and kicked the car's side mirrors. Hurtado drove away, but Molina got back in his car, pulled in front of her, and slammed on his brakes, causing her car to hit his, which damaged her front bumper. Hurtado then managed to drive into the friend's yard, get out of her car, and run inside.

Hurtado had her car repaired. She did not recall the exact repair cost, but testified that she paid a $500 deductible and that the total bill exceeded $2,000.

In November 2016, a Pittsburg police officer brought photographs of the car's damaged side mirror, front bumper, and driver's side door to Russo Auto Body in Pittsburg to obtain an estimate of the cost to repair the damage. Based solely on the photos, Russo employee Zackary Lorenzo prepared a written estimate of the repair cost.

In January 2017, the district attorney filed an amended complaint against Molina adding two new counts based on the September 2016 incident, including the felony vandalism count now before us.

Before trial, Molina moved in limine to exclude both the proposed testimony of Zackary Lorenzo about the estimated cost to repair the car and the written estimate Lorenzo had prepared at police request. The court excluded the document but ruled that Lorenzo could testify to his opinion of the repair cost.

Lorenzo testified that he had worked at Russo Auto Body for three years, repaired "a couple thousand" cars, and been certified by "the industry standard . . . in collision repair training." He reviewed three photographs of the damage to the car and testified that he had repaired such damage on other occasions. He opined that both mirrors and a door handle would "need to be replaced," the front bumper "would need to be painted to fix the damage," and the door had a scratch. Based on his review of the photos, he estimated the total repair cost at "around [$]3,000." He estimated that the parts alone for the mirrors

2

and door handle "couldn't be more than maybe 200, 300 bucks" and stated that most of the repair bill would be for labor.

Lorenzo also acknowledged that in November 2016 he had prepared an estimate based solely on photographs. Without objection, the prosecutor showed him a copy of that estimate to refresh his recollection. Lorenzo said that "mirrors are a little more expensive than I thought they would be," and that the estimate had been for $3,876. Defense counsel cross-examined Lorenzo about his preparation of the 2016 estimate, including his then-limited experience as a mechanic and the fact that it is not standard practice to base estimates on photos alone. Defense counsel elicited Lorenzo's confirmation that the 2016 estimate included $1,038 for parts. This sum was for original-equipment-manufacturer parts; after-market parts are "usually cheaper."

The court instructed the jury using CALCRIM No. 2900, which states that a person is guilty of vandalism if he "maliciously damaged or destroyed personal property" that he did not own. The court also gave CALCRIM No. 2901, which directed the jury, if it found Molina guilty on a count of vandalism, to find whether "the amount of damage caused by the vandalism in that count was $400 or more." Molina did not object to these instructions or ask the court to define the phrase "the amount of damage."

The jury found Molina guilty of vandalism in the September 2016 incident and found the amount of damage to be $400 or more.[2] Molina filed a timely notice of appeal challenging only the felony vandalism conviction.

---

[2] The jury hung on counts one and two (injuring a person in a past or present dating relationship (§ 273.5, subd. (a)) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)); found Molina not guilty on count three for vandalism in the June 2016 incident; and found him guilty on counts four and five for contempt of court (§ 166, subd. (c)(1)) in the June and September 2016 incidents. This appeal does not involve those counts. The court sentenced Molina to five years of felony probation, subject to various conditions.

**Discussion**

*1. Sufficient evidence supports the jury's "amount of damage" finding.*

Subdivision (a) of section 594 provides that a person commits vandalism if he or she maliciously defaces, damages, or destroys property; subdivision (b) makes the offense a felony "[i]f the amount of defacement, damage, or destruction is four hundred dollars ($400) or more." Molina contends that there is insufficient evidence that the amount of damage to the car exceeded $400. We review the record in the light most favorable to the judgment to determine if it "discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 562.) We "do not weigh the evidence but rather ask whether there is sufficient reasonable credible evidence of solid value that would support the conviction." (*People v. Russell* (2010) 187 Cal.App.4th 981, 988.)

Without regard to the testimony of several other witnesses, Ms. Hurtado testified that, while she did not recall the exact cost of the repairs, she paid a $500 deductible and the total bill exceeded $2,000. That testimony alone supports the finding that the amount of damage exceeded $400. In determining the value of property in theft cases, "testimony of the owner is competent and sufficient." (2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against Property, § 10, p. 33.) As Hurtado was the owner of the vehicle who paid the deductible, her testimony was no less competent here.

In addition, after reviewing photographs of the damage to the car, Lorenzo estimated the total repair cost at "around [$]3,000."[3] With regard to the mirrors and door

---

[3] Molina contends that the court "erroneously admitted" the photographs over his "thoroughly briefed . . . and subsequently stated objections on foundation," based on a lack of proof of who took the photos or when. The prosecutor initially showed Hurtado the three photos together, asked if they represent how her car looked after the incident, and moved them into evidence based on her affirmative reply. When the court asked if defense counsel wished to be heard, she said only, "Just an objection on foundation." The court sustained the objection and advised the prosecutor to "go through each individual photo." He did so, asking Hurtado if each one "fairly and accurately depict[s] the damage." Each time, she answered "yes" and each time, the prosecutor moved the photo

4

handle, he stated that the parts alone "couldn't be more than maybe 200, 300 bucks," but after refreshing his recollection by reviewing his 2016 estimate, he added that "mirrors are a little more expensive than I thought they would be." Lorenzo also testified that most of the repair bill would be for labor. His testimony further supports a finding that the reasonable cost to repair the mirrors and door handle alone exceeded $400.[4]

Molina contends that the phrase "amount of damage" in section 594 refers to the fair market value of the property damaged, not the cost of repairing the property, so that the relevant question is whether there was sufficient evidence that the value of the damaged parts exceeded $400, excluding labor costs to repair or replace them. We disagree.

*People v. Farell* (2002) 28 Cal.4th 381, on which Molina relies, is inapposite. That case analyzed a former statute that applied " 'only to a defendant convicted of a felony for theft of an amount exceeding [$50,000] in [specified circumstances].' " (*Id.* at p. 385, quoting former § 1203.044, subd. (a).) The question was whether the statute applied in cases involving "theft of property other than money." The court held that it did. While the court cited section 594 as one of several examples of statutes "in which 'amount' refers to value" (*id.* at p. 389), it did so only to illustrate how the phrase "amount exceeding fifty thousand dollars" *may* refer to property of that value, and not only to cash or cash equivalents. *Farell* does not suggest that the "amount of damage" as used in section 594 may not refer to the cost of repairing damaged property. To the contrary, section 594

---

into evidence, the court asked "any objection?" and defense counsel said, "Submitted." Hurtado's testimony provided sufficient foundation for the admission of the photographs. Reviewing for abuse of discretion (*People v Smith* (2009) 179 Cal.App.4th 986, 1001), we find no error in overruling the objection.

[4] Molina contends that the court erred in allowing the jury to aggregate the cost of repairing the bumper with the cost of repairing the mirrors and door handle because there was no evidence that he acted with a malicious intent to damage Hurtado's car when he slammed on his brakes, causing the collision that damaged the bumper. Molina did not ask the court to instruct the jury to include repair costs attributable to each part only if it found that he acted with the requisite intent in causing damage to that specific part. Even if Molina did not forfeit this issue, the record contains sufficient evidence to permit the jury to find that the amount of damage to the mirrors and door handle exceeded $400.

"requires the People to prove the amount of 'defacement, damage, or destruction,' which we interpret to include the cost of repairing or replacing the vandalized property." (*In re A.W.* (2019) 39 Cal.App.5th 941, 950.)

2. *Molina forfeited any hearsay objection to the limited use of the 2016 estimate.*

Molina argues that the written estimate Lorenzo created in 2016, based solely on photographs shown to him by a police officer, was inadmissible hearsay, lacked foundation, and was "admitted" in violation of his constitutional right to confront witnesses. But the trial court never admitted the written estimate into evidence; it granted Molina's motion in limine to preclude the People from offering the document into evidence. While Lorenzo did review a copy of the 2016 estimate to refresh his recollection and did describe some of its content, defense counsel did not object to this use of the document. Moreover, she herself asked Lorenzo about parts of the estimate not addressed by the prosecutor and suggested that he refresh his recollection by reviewing the estimate. Molina thus forfeited any objection to the limited use of the estimate.

3. *The trial court was not obliged to instruct the jury sua sponte on the meaning of the phrase "amount of damage."*

" 'Even in the absence of a request, a trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' [Citations.] That obligation comes into play when a statutory term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted meaning' [citation], or has a technical meaning peculiar to the law or an area of law." (*People v. Roberge* (2003) 29 Cal.4th 979, 988.) " '[A] legal concept that has been referred to only infrequently, and then with "inadequate elucidation," cannot be considered a general principle of law such that a trial court must include it within jury instructions in the absence of a request.' " (*People v. Molano* (2019) 7 Cal.5th 620, 668.)

Molina contends that the trial court was required to give an instruction defining the phrase "amount of damage," as used in CALCRIM No. 2901, and explaining how to calculate that amount. He argues that the phrase lacks a plain, unambiguous meaning because it is unclear whether it refers to the actual or the reasonable cost of repairing

6

damaged property. The Attorney General responds that CALCRIM No. 2901 tracks the language of section 594, and that the text of a statute defining a crime " ' "is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification." ' " (*People v. Smithey* (1999) 20 Cal.4th 936, 980–981.) We agree that the phrase "amount of damage" as used in section 594 and in CALCRIM No. 2901 is not so ambiguous as to trigger a duty to give a clarifying instruction absent request. Moreover, the jury heard substantial evidence that both the actual cost of repairs (as testified to by Hurtado) and their reasonable cost (as estimated by Lorenzo) were substantially greater than $400. Thus, even if the trial court erred by failing to give a sua sponte instruction, any such error was harmless.

4. *The trial court was not obliged to instruct the jury sua sponte on vehicle tampering as a lesser included offense of vandalism.*

Section 594, subdivision (a) provides in pertinent part that a person commits vandalism if he or she "maliciously commits any of the following acts with respect to any . . . property not his or her own . . . : [¶] (1) Defaces . . . . [¶] (2) Damages. [¶] (3) Destroys." Vehicle Code section 10852 provides that one may not "willfully injure or tamper with any vehicle or the contents thereof or break or remove any part of a vehicle without the consent of the owner." Molina contends that vehicle tampering under section 10852 is a lesser included offense of vandalism of a vehicle, and that the trial court erred in failing, sua sponte, to give that instruction. The only salient difference between the two offenses in a case involving a vehicle is that vandalism requires the defendant to have acted "maliciously," while tampering requires that he have acted "willfully."[5] The Attorney General does not dispute that, under the offense charged here, tampering was a lesser included offense of vandalism, and we do not disagree.

Nonetheless, the trial court was not obliged to instruct sua sponte on vehicle tampering because "no substantial evidence support[ed] a jury determination that

---

[5] Vehicle tampering does not require a minimum amount of damages, but the instructions permitted the jury to find defendant guilty of misdemeanor vandalism if the amount of damage did not exceed $400.

7

[Molina] was in fact guilty only of that offense." (*People v. Parson* (2008) 44 Cal.4th 332, 350.) No substantial evidence would support a finding that Molina damaged Hurtado's car willfully but not maliciously. Molina contends the jury could have found that he acted willfully but not maliciously because willfulness "fits the witness[es]' descriptions of [his] actions as *reactive* in nature, and committed under emotional distress, much more aptly" than does malice. But Molina cites no authority suggesting that an act fueled by emotion cannot have been performed with "malice." Section 594 requires only "malice" as defined by section 7, which entails "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act." The "malice" required as an element of vandalism is not the "malice aforethought" required as an element of murder (*People v. Sekona* (1994) 27 Cal.App.4th 443, 452–453, 456–457), which is absent if a defendant acted in the heat of passion. (*People v. Blakeley* (2000) 23 Cal.4th 82, 87–88.) In *People v. Moore* (2018) 19 Cal.App.5th 889, the court held that vandalism is a general-intent crime, making evidence of voluntary intoxication inadmissible to negate the element of intent, even though such evidence is admissible in murder cases on the issue of whether a defendant " 'premeditated, deliberated, or harbored express malice aforethought.' " (*Id.* at p. 893, quoting § 29.4, subd. (b).) The court noted that "vandalism is an aggressive act often committed impulsively, and more likely to be committed while intoxicated due to lowered inhibitions." (*Id.* at pp. 895–896.) In this case, even if Molina acted impulsively, he necessarily acted maliciously if he acted willfully.

## Disposition

The judgment is affirmed.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
TUCHER, J.

8