Filed 2/10/22  P. v. Cruz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079452 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 17CR005883) |
| AGUSTIN GABRIEL CRUZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Monterey County, Andrew G. Liu, Judge.  Affirmed.

Patrick J. Hoynoski, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Agustin Cruz guilty of one count of arson. (Pen. Code, § 451, subd. (d).)[1] The trial court sentenced him to two years in prison, but deemed the sentence satisfied by custody and conduct credits. On appeal, Cruz contends the trial court erred by excluding evidence of his mental condition to negate the mental state required to commit arson, which requires proof that a person "willfully and maliciously" started a fire. (§ 451.) He acknowledges the California Supreme Court held in *People v. Atkins* (2001) 25 Cal.4th 76 (*Atkins*) that arson is a general intent crime, and that section 28 excludes evidence of an offender's mental condition to negate general intent. He maintains, however, that *Atkins* is either wrongly decided or distinguishable, and that excluding evidence of his mental condition violated his due process right to present a complete defense. For reasons we will explain, we find *Atkins* applicable and binding, and find no due process violation. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Prosecution Case*

About 11:00 p.m. on December 7, 2017, Salinas police officers responded to a hospital parking lot where firefighters were extinguishing a burning SUV that belonged to a hospital employee. The only civilian at the scene was Cruz, who appeared to be transient.

When one officer asked Cruz to move away from the smoke, Cruz began talking right away about Joaquin Guzman, whom the officer understood was a drug cartel kingpin known as "El Chapo." Cruz said he "was on orders from El Chapo," listed the names of El Chapo's sons, and said he was also one of El

---

[1]    Further undesignated statutory references are to the Penal Code.

2

Chapo's sons. Cruz asked the officer if he also worked for El Chapo. It was "obvious" to the officer that Cruz was not "responding in a rational way."

The officer asked Cruz if he knew how the SUV caught fire. Cruz initially responded that it was a " 'short circuit,' " but later stated he started the fire by putting a blanket on a tire and lighting it with a lighter. Cruz said he started the fire in " 'personal defense' " because he believed his daughters had been kidnapped, and he was " '[c]alling attention' " to his need to fight for his children. But he also said he started the fire on orders from El Chapo, which he received " '[t]hrough a wireless network' " transmitted to " 'a chip' " in his arm.

The officer told his partner that Cruz was "not all there," and they decided to arrest him. They handcuffed and searched Cruz, and found a lighter and matches in his possession.

The officers' interactions with Cruz were captured on their body-worn cameras, and the footage was played at trial.

The officers' investigation did not yield any evidence indicating Cruz was connected in any way to El Chapo, or that any family members had been kidnapped.

### Defense Case

Cruz did not present a defense case. His counsel acknowledged in closing argument "[t]here is no question [Cruz] started" the fire—the only "question is *why*" he did it. (Italics added.) Counsel argued the body-worn camera footage showed "from the start that [Cruz] wasn't acting rational[ly]," "wasn't all there," and "was operating in a totally different reality." Counsel suggested this showed Cruz could not have willfully and maliciously started the fire.

3

### *Verdict and Sentence*

Cruz was charged with a single count of arson. (§ 451, subd. (d).) A jury found him guilty, and the trial court sentenced him to the middle term of two years, which the court deemed him to have satisfied with custody and conduct credits.

## DISCUSSION

Cruz contends the trial court erred by excluding evidence of his mental condition to negate the mental state required to commit arson. We disagree.

### A. Background

The prosecution and defense each moved in limine to determine the admissibility of evidence regarding Cruz's mental condition.

The prosecution argued the evidence was inadmissible because the Supreme Court held in *Atkins*, *supra*, 25 Cal.4th 76 that arson is a general intent crime, and, under section 28, evidence regarding a defendant's mental condition is inadmissible to negate general intent.

Cruz argued that, notwithstanding *Atkins*, evidence regarding his mental condition was admissible to show he did not "willfully" or "maliciously" start the fire. He argued the evidence was also relevant to the credibility of his crime-scene confession, and to whether he acted "unconsciously or without volition." In a supplemental brief, Cruz argued that excluding evidence of his mental condition would violate his due process "right to put on a complete defense."

The court held an Evidence Code section 402 hearing to evaluate Cruz's proposed expert testimony regarding his mental condition. The court advised at the outset that "the full weight of authority is that [evidence regarding] mental illness would not be admissible . . . with respect to general intent."

4

Accordingly, Cruz focused his presentation on "willfulness and unconsciousness."

Psychologist Carolyn Murphy then testified. She evaluated Cruz in custody about one month after his arrest. At that time, Cruz had written "El Chapo" and other unintelligible words on his jail clothes and shoes. He told Dr. Murphy he was a relative and operative of El Chapo, that he received orders "through some sort of transponder," and that he believed a family member had been kidnapped. Cruz explained he started the fire to summon help for the crisis he perceived regarding his kidnapped relative, and because "he had been told by El Chapo to set the fire."

Dr. Murphy opined that during the evaluation Cruz was exhibiting symptoms of "schizophrenia or some form of schizophrenia spectrum disorder." Based on her review of court and medical records, she further opined Cruz was also "experiencing psychosis at the time of the offense."

On cross-examination, Dr. Murphy acknowledged that in a hypothetical situation mirroring the facts of the case, the hypothetical arson suspect "would know they were doing the act of lighting a fire."

After hearing argument, the trial court ruled that evidence regarding Cruz's mental condition was inadmissible. First, regarding willfulness, the trial court cited our court's decision in *People v. Thiel* (2016) 5 Cal.App.5th 1201 (*Thiel*) to support the conclusion that willfulness is a general intent concept and, thus, evidence of mental illness is inadmissible to negate it. (*Id.* at pp. 1214-1216.) Second, the court found Cruz had not made "a sufficient offer of proof" of unconsciousness because the evidence showed the contrary: Cruz "had full awareness of his actions" and "[e]ven Dr. Murphy

concedes . . . that [Cruz] was conscious of his acting."[2]  The court did not expressly address Cruz's due process argument.

Cruz renewed his motion during trial.  The court again denied the motion, explaining that allowing an exception "for mental health illness to address volition or willfulness[,] which is an element for . . . just about every general intent crime," "really would swallow up the rule prohibiting mental illness evidence in general intent crimes."

## B.  Legal Principles

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned . . . any structure, forest land, or property."  (§ 451; see *id.*, subd. (d) ["Arson of property is a felony punishable by imprisonment in the state prison for 16 months, two, or three years."].)

In *Atkins, supra*, 25 Cal.4th 76, the California Supreme Court held that despite the arson statute's use of the terms "willfully" and "maliciously," the arson offense "requires only a general criminal intent"—"the specific intent to set fire to . . . the relevant structure or forest land is not an element of arson." (*Id.* at p. 84; see *In re V.V.* (2011) 51 Cal.4th 1020, 1028 [reiterating arson is a general intent crime].)  Based on this holding, the *Atkins* court held that, under former section 22,[3] evidence of the defendant's voluntary intoxication was inadmissible to negate the mental state required to commit arson. (*Atkins, supra*, 25 Cal.4th at p. 81.)

---

[2]  Cruz does not challenge the trial court's ruling with respect to unconsciousness.

[3]  Former section 22, subdivision (b) stated:  "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required *specific intent . . . .*"  (Italics added.)  Former section 22 was renumbered, with change not relevant here, as section 29.4. (See Stats. 2012, ch. 162, § 119.)

6

Similarly to former section 22, as relevant here, section 28 renders evidence of a defendant's mental condition inadmissible to negate general intent. (§ 28, subd. (a); see *People v. Jefferson* (2004) 119 Cal.App.4th 508, 519 (*Jefferson*) ["Evidence of [a] defendant's mental condition is not admissible to prove the absence of general intent."].) Section 28, subdivision (a) states in part: "Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent . . . when a specific intent crime is charged." Subdivision (b) of section 28 states: "As a matter of public policy there shall be no defense of diminished capacity . . . in a criminal action . . . ."

"We review a trial court's evidentiary rulings for abuse of discretion." (*People v. Clark* (2016) 63 Cal.4th 522, 597.) "A trial court ruling that rests on an error of law is an abuse of discretion." (*Bennett v. Superior Court* (2019) 39 Cal.App.5th 862, 876; see *People v. Patterson* (2017) 2 Cal.5th 885, 894.) "Whether a particular crime is a specific or general intent crime is a question of law." (*United States v. Grace* (9th Cir. 2006) 198 Fed.Appx. 647, 649, fn. 3; see *People v. Moore* (2018) 19 Cal.App.5th 889, 893.)

### C. Analysis

We conclude the trial court correctly found arson is a general intent crime and, thus, properly excluded evidence of Cruz's mental condition at the time of the offense.

Cruz was charged with a single count of arson. Our Supreme Court expressly held in *Atkins* (and reaffirmed in *In re V.V.*) that arson is a general intent crime. (*Atkins*, *supra*, 25 Cal.4th at p. 84; *In re V.V.*, *supra*, 51 Cal.4th at p. 1027 [recognizing *Atkins* "held . . . arson is a general intent crime"].) And our Legislature clearly stated in section 28 that evidence of a defendant's mental condition is inadmissible to negate general intent. (§ 28, subd. (a); see

7

*Jefferson, supra,* 119 Cal.App.4th at p. 519.)  Therefore, the trial court correctly found evidence of Cruz's mental condition was inadmissible to show he lacked the general intent to commit arson.

Cruz argues at length in his briefing that we "should find that arson is a specific intent crime."  We are, of course, bound by the *Atkins* court's holding to the contrary.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity Sales*).)  Accordingly, we conclude arson remains a general intent crime.

Cruz maintains we are not bound by *Atkins* because it addressed a "different issue than the one presented here"—*Atkins* addressed the admissibility under former section 22 of evidence of voluntary intoxication, whereas the issue here is the admissibility under section 28 of evidence of mental condition.  This is a distinction without a difference.  The import of *Atkins* is its holding that arson is a general intent crime.  The inevitable statutory consequence of that holding was that evidence of the defendant's voluntary intoxication was inadmissible under former section 22 to negate the general intent required to commit arson.  Likewise, here, the inevitable statutory consequence of the *Atkins* court's holding is that evidence of Cruz's mental health is inadmissible under section 28 to negate the general intent required to commit arson.  The *Atkins* court's holding that arson is a general intent crime did not hinge on intoxication or interpretation of former section 22.

Cruz argues there are public policy reasons for treating voluntarily intoxicated offenders differently than offenders who suffer from mental illness.  He cites *People v. Hood* (1969) 1 Cal.3d 444 (*Hood*), in which the court noted "[t]he distinction between specific and general intent crimes evolved as a judicial response to the problem of the *intoxicated* offender."

8

(*Id.* at p. 455, italics added.)  "That problem [was] to reconcile two competing theories of what is just in the treatment of those who commit crimes while intoxicated.  On the one hand, the moral culpability of a drunken criminal is frequently less than that of a sober person effecting a like injury.  On the other hand, it is commonly felt that a person who voluntarily gets drunk and while in that state commits a crime should not escape the consequences."  (*Ibid.*)  The judicial response was to distinguish between general intent and specific intent crimes, and to allow voluntary intoxication to negate only specific intent.  (*Id.* at pp. 456-457.)

Cruz reasons the policy implications that justified distinguishing between general and specific intent crimes as applied to intoxicated offenders do not justify applying that distinction to offenders who suffer from mental illness.  We are not persuaded.

First, regardless of whether the initial impetus for distinguishing between general and specific intent crimes was "the problem of the intoxicated offender" (*Hood, supra*, 1 Cal.3d at p. 455), the Legislature—by enacting section 28—unequivocally applied that distinction to offenders who suffer from mental illness.  "It is for the Legislature, not the courts, to choose between conflicting public policies."  (*Steven S. v. Deborah D.* (2005) 127 Cal.App.4th 319, 326; *People v. Barefield* (2021) 68 Cal.App.5th 890, 899 ["If [a statute's] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend."].)

Second, the courts—including ours—have recognized that, "[a]s a defense, '[m]ental illness poses a policy dilemma similar in many respects to that of [the defense of] voluntary intoxication.' " (*Thiel, supra*, 5 Cal.App.5th at p. 1209; see *People v. Gutierrez* (1986) 180 Cal.App.3d 1076, 1084.)  Thus,

9

the law treats both classes of offender similarly with respect to admitting evidence to negate a required specific intent. (§§ 28, 29.4; former § 22.) But the law grants even more lenity to offenders who suffer from mental illness.

For example, a "defendant who pleads and proves insanity is totally absolved of criminal responsibility although subject to civil confinement." (*Thiel*, *supra*, 5 Cal.App.5th at p. 1209.) Alternatively, a defendant with a qualifying mental illness may seek mental health diversion and receive treatment in lieu of punishment.[4] (§ 1001.36, subd. (a).) If the treatment is successful, the defendant's charges will be dismissed and the underlying arrest "shall be deemed never to have occurred." (*Id.*, subd. (e).) Finally, a defendant's mental condition may be considered a mitigating circumstance for sentencing purposes. (See, e.g., Cal. Rules of Court, rules 4.423(b)(2) [sentencing], 4.413(c)(2)(B) [overcoming presumption of ineligibility for probation].)

Cruz suggests the fact that the "Legislature decided not to distinguish between specific and general intent crimes in the" mental health diversion statutes indicates the distinction no longer applies with respect to mental condition. However, in enacting the mental health diversion statutes, the Legislature did not repeal or otherwise amend section 28, which continues to recognize the distinction between general and specific intent crimes with respect to mental condition. (See *People v. Lewis* (1993) 21 Cal.App.4th 243, 255, fn. 4 ["In enacting statutes, the Legislature is presumed to be aware of existing laws in effect at the time legislation is passed and to have enacted

---

4    Although schizophrenia and schizoaffective disorder are qualifying mental illnesses under the diversion statute (§ 1001.36, subd. (b)(1)(A)), Cruz asserts (without explanation) in his opening brief that "mental health diversion does not apply here."

10

statutes in light of such existing laws."]; *Albrecht v. County of Riverside* (2021) 68 Cal.App.5th 692, 703 [" ' "repeals by implication are not favored" and will not be presumed unless the "intention of the legislature to repeal [is] clear and manifest" ' "].)

Finally, Cruz contends the trial court's exclusion of evidence regarding his mental condition "violated [his] due process rights because it prevented him from presenting a complete defense." However, the California Supreme Court has repeatedly rejected similar challenges. (See *People v. Saille* (1991) 54 Cal.3d 1103, 1116 ["The abolition of the diminished capacity defense and limitation of admissible evidence to actual formation of various mental states has been held not to violate the due process right to present a defense."]; see also *People v. Soto* (2018) 4 Cal.5th 968, 981 ["The Legislature has decided, for policy reasons, that evidence of voluntary intoxication is irrelevant to proof of certain mental states. The Legislature may validly make that policy decision."]; *Atkins*, *supra*, 25 Cal.4th at p. 93 ["we reject defendant's argument that the withholding of voluntary intoxication evidence to negate the mental state of arson violates his due process rights by denying him the opportunity to prove he did not possess the required mental state"].) We, too, reject the challenge. (See *Auto Equity Sales*, *supra*, 57 Cal.2d at p. 455.)

## DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.